## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DASHAWN HAYES, ADMINISTRATOR OF | : | Civil Action No. 22-cv-3395 |
| THE ESTATE OF VIVIAN FRANKLIN, | : | |
|     Plaintiff, | : | |
| | : | |
|           v. | : | |
| | : | |
| CITY OF PHILADELPHIA; | : | |
| CORIZON HEALTH, INC.; | : | |
| YESCARE CORP.; | : | |
| BRUCE HERDMAN; | : | |
| CARL FIERIMONTE, JR.; | : | |
| CHRISTINE FOREMAN, N.P.; | : | |
| DORIAN JACOBS, M.D.; | : | |
| ASHLEY MORET, R.N.; | : | |
| VANESSA PEART, R.N.; | : | |
| TYRONE TURNER, R.N.; | : | |
| STEVEN WILBRAHAM, M.D.; | : | |
| ISAAC LEFKOWITZ; | : | |
| DAVID GEFNER; | : | |
| FRANK JEFFREY SHOLEY; | : | |
| SARA ANN TIRSCHWELL; | : | |
| JEFFREY SCOTT KING; | : | |
| C.O. A. JACKSON; and | : | |
| C.O. D. KENO, | : | |
|     Defendants. | : | |

## SECOND AMENDED COMPLAINT

The Plaintiff, Dashawn Hayes, as the Administrator of the Estate of Vivian Franklin, by and

through his attorney, Brian J. Zeiger, Esq., hereby alleges the following:

## PARTIES

1.  The Plaintiff, Dashawn Hayes, is the Administrator of the Estate of Vivian Franklin,

    deceased, and is an adult individual who currently resides at 2456 N. Patton Street,

    Philadelphia, PA 19132.

1

2. Defendant City of Philadelphia is a municipality in the Commonwealth of Pennsylvania, operating the Philadelphia Prison System (hereinafter "PPS") with its principal place of business at 8001 State Road, Philadelphia, PA 19136.

3. Defendant Corizon Health, Inc. (hereinafter "Corizon") is a healthcare provider that contracted with the City of Philadelphia to provide all medical and healthcare services to prisoners and pretrial detainees housed in the PPS, with a business address at 8001 State Road, Philadelphia, PA 19136.

4. Defendant YesCare Corp. (hereinafter "YesCare") is a corporation organized under the laws of the State of Texas that received all of Corizon's active contracts, operational infrastructure, management personnel, and ongoing business operations through a divisive merger executed in May 2022. YesCare is the successor in interest to Corizon Health, Inc., and is sued on theories of successor liability, de facto merger, mere continuation, and alter ego/piercing the corporate veil.

5. Defendant Bruce Herdman is the Chief Medical Officer (hereinafter "CMO") at the Philadelphia Prison System and is sued in his individual and official capacities.

6. Defendant Carl Fierimonte, Jr., Christine Foreman, N.P., Dorian Jacobs, M.D., Ashley Moret, R.N., Vanessa Peart, R.N., Tyrone Turner, R.N., and Steven Wilbraham, M.D. were employed by Corizon as a medical professional at the PPS at all times relevant to this Complaint, with a business office at 8001 State Road, Philadelphia, PA 19136, and is sued in their individual capacity.

7. Defendant was employed by Corizon as a Nurse Practitioner at the PPS at all times

8. Defendant Isaac Lefkowitz is an investor, advisor, and director of Perigrove, Geneva Consulting LLC, and Genesis Healthcare Inc. Lefkowitz served as the decision-maker for

Perigrove 1018 and signed the Geneva Consulting Agreement as "Interim CEO" of Valitás Health Services, Inc. Lefkowitz is sued in his individual capacity for his personal participation in the fraudulent restructuring, on theories of veil-piercing/alter ego liability, personal participation in fraud, and aiding and abetting.

9. Defendant David Gefner is the Founder and Principal of Perigrove Capital. Gefner is listed in incorporation records as a director of Tehum Care Services, Inc. and simultaneously served as President of YesCare Corp. during the restructuring. Gefner is sued in his individual capacity for his personal participation in the fraudulent restructuring, on theories of veil-piercing/alter ego liability, personal participation in fraud, and dual-role conflict of interest.

10. Defendant Frank Jeffrey Sholey is the former Chief Financial Officer of Corizon Health, Inc. and the current Chief Executive Officer of YesCare Corp. As CFO of Corizon, Sholey had direct personal involvement in executing the financial transfers that the Debtor and Unsecured Creditors' Committee identified as potentially fraudulent. Sholey is sued in his individual capacity for his personal participation in the fraudulent restructuring, on theories of successor liability, veil-piercing, and fraud.

11. Defendant Sara Ann Tirschwell is the former Chief Executive Officer of Corizon Health, Inc. and YesCare Corp. As CEO of both entities, Tirschwell had ultimate executive authority over the operational decisions of both entities during the relevant period and is identified as a Released Party in the Tehum bankruptcy Disclosure Statement. Tirschwell is sued in her individual capacity for her role in the fraudulent restructuring.

12. Defendant Jeffrey Scott King is the former Chief Legal Officer at Corizon Health, Inc. and the current Executive Vice President and Chief Legal Officer at YesCare Corp. King

3

is identified as a Released Party in the Tehum bankruptcy Disclosure Statement and had direct involvement in structuring and approving the legal mechanics of the divisive merger. King is sued in his individual capacity for his personal participation in the fraudulent restructuring.

13. Defendant C.O. A. Jackson and C.O. D. Keno were on duty as a Corrections Officers at the Philadelphia Prison System, an employee of the City of Philadelphia, at all times relevant to this Complaint, with a principal place of business at 8001 State Road, Philadelphia, PA 19136, and is sued in her individual capacity.

## JURISDICTION AND VENUE

14. This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth Amendment of the United States Constitution.

15. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

16. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

17. The Plaintiff re-alleges each and every averment as set forth previously, as if the same were set forth here in full.

18. On or about April 23, 2020, the City of Philadelphia contracted with Corizon to provide health care to all prisoners and pretrial detainees housed in the Philadelphia Prison System.

4

19. The City of Philadelphia, along with Corizon, is responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that all pretrial detainees and prisoners are provided proper medical and healthcare while in their custody.

20. On August 14, 2021, Vivian Franklin was taken into police custody on a narcotics-related charge.

21. At the time of her arrest, Ms. Franklin was a pre-trial detainee.

22. On August 15, 2021, at approximately 3:20 a.m., Vivian Franklin was processed at intake at the Philadelphia Prison System and was housed at the Riverside Correctional Facility (hereinafter "RCF"), Satellite DC, in cell #320 on C-Block.

23. Ms. Franklin consented to medical screening and a physical examination upon intake.

24. At approximately 5:00 a.m. on August 15, 2021, the medical intake assessment commenced.

25. During the intake assessment, Ms. Franklin disclosed that she had been a heroin user for one year, using two to three bags per day, with the most recent use on August 14, 2021. She appeared to be under the influence of drugs at the time of intake, with a blood pressure reading of 141/91, a Glasgow Coma Scale total of 14, and a Clinical Opiate Withdrawal Scale ("COWS") score of 2.

26. Ms. Franklin had a known medical history of asthma, hypertension, depression, and anxiety, and had a prior suicide attempt approximately five years earlier. She reported taking Xanax 2mg TID, with the last dose taken approximately one month prior.

27. Corizon commenced a withdrawal protocol for opioid dependence following the intake assessment.

28. Ms. Franklin was assigned to a lower bunk, but was not provided any meaningful monitoring to ensure her safety during the acute withdrawal period.

29. At some point on August 15, 2021, Ms. Franklin's COWS score was re-assessed at 7, significantly higher than her initial score of 2, indicating a materially worsening withdrawal condition. Her symptoms included sweating/chills, mild diffuse discomfort of bone or joint aches, and vomiting or diarrhea.

30. Despite the worsening COWS score, Ms. Franklin was not given the withdrawal medications that were prescribed by Corizon's own medical staff. **None of the medical defendants or the corrections defendants provided her with the prescribed medication throughout the entire period of her incarceration.**

31. On August 16, 2021, at approximately 1:00 a.m., Ms. Franklin was unable to leave her cell for an additional medical assessment due to the severity of her withdrawal symptoms. She was refused a new medical assessment by staff who declined to conduct the assessment at her cell.

32. The staff acknowledged in their notes that the risks of refusing medical treatment were "severe withdrawal, seizures, change in mental status, death." Despite this documentation, no assessment was performed.

33. On August 16, 2021, at approximately 8:30 a.m., Ms. Franklin was found on the ground on her mattress outside her cell door, post-fall, with a one-inch laceration under her left eye, and was completely unresponsive with no pulse and not breathing.

34. Medical staff initiated uninterrupted CPR. An AED was applied (no shock advised), IV access was placed, a blood sugar was obtained (102), Narcan was administered, and epinephrine was administered. At 8:48 a.m., EMS arrived and continued resuscitative

efforts. Ms. Franklin achieved return of spontaneous circulation (ROSC) via palpated pulse. She was transported to Nazareth Hospital at approximately 8:58 a.m.

35. Ms. Franklin was admitted to the Intensive Care Unit at Nazareth Hospital. Her condition continued to deteriorate and she later died on August 16, 2021. Her cause of death was Drug Intoxication (Fentanyl), as reflected in her Certificate of Death.

## **INDIVIDUAL INVOLVEMENT OF EACH DEFENDANT**

36. Defendant City of Philadelphia is the municipal authority that operates the Philadelphia Prison System and is directly responsible for the health, safety, and welfare of all inmates and pre-trial detainees in its custody. The City contracted with Corizon on or about April 23, 2020, to provide medical care to all PPS inmates. Notwithstanding this contractual relationship, the City retained ultimate responsibility for inmate care and was obligated to ensure that adequate medical services were delivered. The City failed to create, implement, and enforce policies, practices, and procedures to ensure that proper care was provided to pre-trial detainees experiencing acute opioid withdrawal; failed to ensure that medical personnel properly examined inmates complaining of serious medical symptoms; failed to dispense prescribed medication to inmates; and failed to staff the PPS with a sufficient number of qualified medical personnel. The City's deliberate indifference to the well-known risks of untreated opioid withdrawal was a direct and proximate cause of Vivian Franklin's death.

37. Defendant Corizon was the contracted healthcare provider at the PPS responsible for all medical care delivered to inmates, including Vivian Franklin. Corizon employed, supervised, directed, and controlled all medical staff who assessed, treated, and

7

monitored Ms. Franklin during her incarceration from August 15 through August 16, 2021. Corizon promulgated and maintained systemic policies and customs that caused the denial of adequate medical care to inmates in opioid withdrawal, including policies that resulted in the failure to administer prescribed withdrawal medications, failure to conduct timely medical assessments, failure to respond appropriately when inmates could not ambulate for evaluation, and inadequate staffing of qualified medical personnel. Corizon's policies were the moving force behind Ms. Franklin's death.

38. Defendant YesCare Corp. is the successor in interest to Corizon Health, Inc. In May 2022, Corizon executed a divisive merger through a Texas Two-Step restructuring in which all active contracts, infrastructure, management personnel, and ongoing operations were transferred to YesCare, while all liability, including the claims of Plaintiff, was assigned to a shell entity, Tehum Care Services. YesCare is liable as Corizon's successor under theories of de facto merger, mere continuation, and the fraud exception to successor liability. YesCare received all of the benefits of Corizon's operations while Tehum was placed in bankruptcy to extinguish liability. YesCare is liable for all claims arising from Corizon's conduct.

39. Defendant Bruce Herdman served as the Chief Medical Officer of the Philadelphia Prison System and was the final decision-maker for all medical policy and treatment for all prisoners at the PPS during the time period of Ms. Franklin's incarceration. Herdman established and maintained deficient policies and procedures related to medical care, including: minimizing medical care due to budgetary concerns; restricting reasonable medical treatment; failing to ensure proper dispensing of prescribed medications to inmates experiencing acute withdrawal; failing to fix or correct the obviously deficient

8

sick-call system; providing inadequate training of medical and corrections personnel; providing inadequate supervision of medical and corrections staff; and failing to ensure that medical staff conducted proper assessments of inmates who were physically unable to ambulate to sick call. Herdman was personally involved in the decision-making that led to the failures described in this Complaint. His deliberate indifference to the systemic medical failures at the PPS was a direct and proximate cause of Ms. Franklin's death.

40. Defendant Carl Fierimonte, Jr. was a Corizon medical employee who interviewed Vivian Franklin at or near the time of her initial intake on August 15, 2021, and who was directly responsible for documenting her medical history and opioid dependence for the purpose of initiating appropriate withdrawal monitoring and treatment. Fierimonte failed to properly document Ms. Franklin's opioid dependence, including the nature and extent of her heroin use and the anticipated severity of her withdrawal. This failure to adequately document Ms. Franklin's substance use history at intake directly undermined the adequacy of the withdrawal protocol that followed, deprived other medical staff of complete information necessary to render appropriate care, and was a contributing cause of the inadequate treatment she received.

41. Defendant Christine Foreman, N.P. was a Corizon Nurse Practitioner who personally assessed Vivian Franklin on August 15, 2021, and conducted the withdrawal protocol assessment. Foreman prescribed a regimen of withdrawal medications, including Vistaril 50mg every 6 hours PRN, Pepto-Bismol 524mg/30mL every 6 hours PRN, Dicyclomine HCl 20mg every 6 hours PRN, Loperamide HCl 2mg three times daily PRN, Clonidine HCl 0.1mg three times daily PRN, Promethazine HCl 25mg every 6 hours PRN, Acetaminophen 325mg every 6 hours PRN, and Ondansetron 4mg every 6 hours PRN, all

effective August 15, 2021. These medications were never administered to Ms. Franklin. Foreman failed to take any steps to ensure that the medications she prescribed were actually delivered to Ms. Franklin, failed to follow up on the execution of her own orders, and failed to escalate her care when it became apparent that Franklin was not receiving treatment. Foreman's deliberate indifference to her patient's acute withdrawal directly contributed to Ms. Franklin's death.

42. Defendant Dorian Jacobs, M.D. was a Corizon physician who personally assessed Vivian Franklin on August 15, 2021, and was listed as the ordering provider for Ms. Franklin's withdrawal care. Dr. Jacobs performed a COWS evaluation on August 15, 2021, and was directly aware that Ms. Franklin was experiencing opioid withdrawal symptoms of increasing severity. The COWS assessment conducted under his supervision recorded a score of 7 with severe joint aches and a blood pressure of 135/98. Dr. Jacobs ordered withdrawal medications but took no steps to ensure they were administered. He failed to follow up on Ms. Franklin's deteriorating condition, failed to ensure that his own orders were carried out, and failed to arrange for appropriate monitoring of a patient he knew to be in significant opioid withdrawal. His individual deliberate indifference directly contributed to Ms. Franklin's death.

43. Defendant Tyrone Turner, R.N. was a Corizon Registered Nurse who was personally involved in the medical intake assessment of Vivian Franklin on August 15, 2021, along with Defendant Jacobs. Turner was directly aware of Ms. Franklin's disclosure of heroin use, her presentation as being under the influence at the time of intake, and her elevated vital signs and COWS score. Turner participated in initiating the withdrawal monitoring protocol but failed to ensure that the prescribed withdrawal medications were

administered to Ms. Franklin, failed to escalate her care as her symptoms worsened, and failed to take any corrective action when it became apparent that Ms. Franklin was not receiving the treatment she required. Turner's deliberate indifference to Ms. Franklin's serious medical needs was a contributing cause of her death.

44. Defendant Vanessa Peart, R.N. was a Corizon Registered Nurse who conducted a COWS assessment of Vivian Franklin on August 15, 2021, and electronically signed the assessment at 6:29 PM. The assessment recorded a COWS score of 6, severe joint aches, and a blood pressure of 135/98. Peart was personally and directly aware of Ms. Franklin's significant and worsening withdrawal condition. Despite this documented knowledge of Ms. Franklin's acute medical needs, Peart failed to ensure that Ms. Franklin was administered her prescribed withdrawal medications, failed to escalate her care, and failed to arrange for any additional monitoring or intervention. Peart's individual deliberate indifference to Ms. Franklin's documented serious medical needs directly contributed to her death.

45. Defendant Ashley Moret, R.N. was a Corizon Registered Nurse who was personally involved in the monitoring of Vivian Franklin during the early morning hours of August 16, 2021. At approximately 3:18 a.m., Moret was dispatched to assess Ms. Franklin after Ms. Franklin made complaints of drug withdrawal symptoms and was unable to leave her cell due to the severity of her condition. Moret did not enter Ms. Franklin's cell, did not conduct a physical examination, and did not perform any clinical assessment. Moret's own addendum to the medical record, entered at 5:51 a.m. on August 17, 2021, expressly states: "PT. OPENWARD. ASSESSMENT DID NOT OCCUR." The medical record for this encounter reflects that Moret visualized Ms. Franklin at her cell door with a

11

flashlight, noted that the patient appeared to be in no acute distress, breathing evenly and unlabored, and directed her to contact medical if symptoms worsened, a wholly inadequate response given Ms. Franklin's documented acute withdrawal condition and inability to ambulate. Moret's deliberate refusal to conduct a proper assessment of Ms. Franklin, despite her obvious and documented medical need, was a direct and proximate cause of Ms. Franklin's death less than five hours later.

46. Defendant Steven Wilbraham, M.D. was a Corizon physician who personally assessed Vivian Franklin on August 15, 2021, alongside Defendants Foreman and Jacobs. Dr. Wilbraham was directly involved in the evaluation of Ms. Franklin's opioid withdrawal presentation and in the formulation of her plan of care. He was personally aware of her COWS score, her physical symptoms, and her elevated blood pressure. Despite his direct involvement in establishing her withdrawal protocol, Dr. Wilbraham failed to ensure that the prescribed withdrawal medications were administered to Ms. Franklin, took no corrective action when Ms. Franklin failed to receive her prescribed treatment, and failed to escalate her care as her condition deteriorated. Dr. Wilbraham's deliberate indifference directly contributed to Ms. Franklin's death.

47. Defendant C.O. A. Jackson was a Corrections Officer employed by the City of Philadelphia who was on duty and assigned to guard the C-Block area where Vivian Franklin was housed beginning on August 15, 2021. C.O. Jackson made approximately fifty-one (51) entries in the prison log book from August 15, 2021, at 2:45 p.m. through 11:00 p.m. confirming that she repeatedly toured the block where Ms. Franklin was housed. Despite this documented and continuous presence in Ms. Franklin's housing area over the course of hours, C.O. Jackson did nothing to check on Ms. Franklin's wellbeing,

12

did nothing to ensure that Ms. Franklin had received or was receiving her prescribed withdrawal medications, and did not intervene or summon medical assistance despite being aware that Ms. Franklin had not left her cell and was not receiving prescribed treatment. C.O. Jackson's deliberate indifference to Ms. Franklin's serious medical needs, as evidenced by fifty-one documented log entries with no corresponding action, was a direct and proximate cause of Ms. Franklin's death.

48. C.O. D. Keno was a Corrections Officer employed by the City of Philadelphia who was on duty and assigned to guard the area where Vivian Franklin was housed during the relevant period. C.O. Keno made approximately twenty-six (26) entries in the prison log book confirming that she toured the area where Ms. Franklin was housed during the same critical period as C.O. Jackson. Despite this documented repeated presence in Ms. Franklin's housing area, C.O. Keno did nothing to check on Ms. Franklin's welfare, took no steps to ensure that Ms. Franklin had received her prescribed withdrawal medications, and did not seek medical assistance for Ms. Franklin despite her awareness that Ms. Franklin had not left her cell and was in a medically compromised condition. C.O. Keno's deliberate indifference to Ms. Franklin's serious medical needs, evidenced by twenty-six documented log entries with no intervention, was a direct and proximate cause of Ms. Franklin's death.

49. Defendant Isaac Lefkowitz served as the decision-maker for Perigrove 1018, the entity that acquired the Debtor's ultimate parent, M2 HoldCo, LLC, in December 2021. Lefkowitz is a director of M2 LoanCo, LLC, the entity through which approximately $24.5 million was transferred from the Debtor, and which had only two directors. Lefkowitz personally caused Corizon to enter into the Consulting Agreement with

Geneva Consulting on December 8, 2021, signing the agreement as "Interim CEO" for Valitás. Lefkowitz then directed both the then-CEO and then-CFO of Corizon to transfer substantial sums to Geneva Consulting, totaling $5.5 million before the bankruptcy petition date. The Debtor and Unsecured Creditors' Committee identified these transfers as potential fraudulent transfers under 11 U.S.C. § 548. Lefkowitz personally recommended and orchestrated the Texas Two-Step restructuring strategy. His conduct was designed to deprive tort claimants, including the Plaintiff, of their ability to recover for injuries caused by Corizon's deliberate indifference.

50. Defendant David Gefner, as the Founder and Principal of Perigrove Capital, is the controlling person behind Perigrove 1018 and therefore the ultimate beneficial owner of the corporate chain that controlled Corizon through its restructuring. Gefner simultaneously served as a director of Tehum Care Services, Inc. and as President of YesCare Corp., placing him in the position of controlling both sides of the restructuring transaction. Individuals affiliated with Perigrove were the sole signatories on the Signature Accounts at Signature Bank from which $23.3 million was transferred, while the Debtor's CFO and existing management had no access to these accounts. This financial exclusion demonstrates Gefner's complete dominion over the Debtor's finances and confirms his personal participation in the fraudulent restructuring scheme designed to shield assets from the Plaintiff and similarly situated tort claimants.

51. Defendant Frank Jeffrey Sholey served as Chief Financial Officer of Corizon Health, Inc. and seamlessly transitioned to become Chief Executive Officer of YesCare Corp. following the restructuring, demonstrating direct continuity of management between the pre- and post-restructuring entities. As CFO of Corizon, Sholey had direct personal

14

involvement in executing the financial transfers to Geneva Consulting at Lefkowitz's direction, had intimate knowledge of the restructuring's financial mechanics, and directly benefited from the scheme by obtaining the CEO position at the profitable successor entity. Sholey's personal execution of the transfers identified as potentially fraudulent, and his reward with leadership of YesCare, establishes his individual liability for the fraudulent restructuring designed to extinguish the Plaintiff's claims.

52. Defendant Sara Ann Tirschwell served as Chief Executive Officer of both Corizon Health, Inc. and YesCare Corp. As CEO of both entities, Tirschwell had ultimate executive authority over the operational decisions of both entities during the relevant period, including the decisions to execute the Texas Two-Step restructuring. Tirschwell is identified as a Released Party in the Disclosure Statement filed in the Tehum bankruptcy (*In re Tehum Care Services, Inc.,* Case No. 23-90086 (Bankr. S.D. Tex. 2023)), confirming the bankruptcy estate's recognition of her personal exposure to liability. Her service as CEO of both the debtor entity and the successor entity supports both successor liability and alter ego theories of individual responsibility.

53. Defendant Jeffrey Scott King served as Chief Legal Officer at Corizon Health, Inc. and transitioned to the same role at YesCare Corp. as Executive Vice President and Chief Legal Officer. King is identified as a Released Party in the Tehum bankruptcy Disclosure Statement. As the Chief Legal Officer of both entities, King had direct and personal involvement in structuring, reviewing, and approving the legal mechanics of the divisive merger and the Texas Two-Step restructuring, the very scheme designed to deprive Plaintiff and other tort claimants of their ability to recover for injuries caused by Corizon's deliberate indifference to inmate medical needs. King's continuation in the

identical role at YesCare strongly supports the mere continuation doctrine and his personal liability for participation in the fraudulent restructuring.

## THE HISTORIC FAILURES OF THE PPS TO PROVIDE ADEQUATE MEDICAL CARE TO INMATES AT THE PPS

54. Remick et al. v. City of Philadelphia et al., No. 2:20-cv-01959 (E.D. Pa.). Filed April 20, 2020. Ten people incarcerated in the Philadelphia Department of Prisons (PDP) filed this federal civil-rights class action against the City and the PDP, alleging unconstitutional conditions of confinement including inadequate access to medical care, failure to control the spread of COVID-19, excessive force, and insufficient out-of-cell time. Plaintiffs asserted violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983. Judge Berle M. Schiller certified a class and a medically-vulnerable subclass. The parties reached a class-action settlement approved in April 2022, which imposed federal court monitoring over jail conditions and required the City to take concrete steps to improve medical access. In August 2024, the court found the City in contempt of the 2022 settlement agreement and ordered it to pay $25 million into a dedicated remediation fund and to urgently address chronic staffing shortages that were hampering medical care delivery.

55. Jung, et al. v. City of Philadelphia et al., No. 2:24-cv-05618 (E.D. Pa.). Filed October 23, 2024. The sons of Louis Jung Jr., a 50-year-old pretrial detainee with Type 1 diabetes, filed this wrongful death and survival action against the City of Philadelphia, former PDP Commissioner Blanche Carney, YesCare Corp. (the PDP's contracted medical provider), YesCare Medical Director Lalitha Trivikram, intake nurse Maureen Gay, and PDP Lieutenant Wanda Bloodsaw. Plaintiffs alleged deliberate indifference under the Fourteenth Amendment and violations of the Americans with Disabilities Act. The

16

complaint alleged that Jung received no insulin for the final six days of his life while detained at the Curran-Fromhold Correctional Facility (CFCF) despite repeated requests, that staff failed to conduct glucose monitoring or transfer him to the infirmary or a hospital, and that Lt. Bloodsaw directed other incarcerated individuals to drag Jung, who was visibly in distress and unable to stand, back to his cell as he lay dying. Jung died of diabetic ketoacidosis on November 6, 2023. After a trial in February 2026, a jury awarded $1.5 million in compensatory damages and an additional $170,000 in punitive damages against Lt. Bloodsaw individually.

56. Barrow v. City of Philadelphia, Corizon Health, Inc. et al., No. 2:22-cv-03322 (E.D. Pa.). Filed August 19, 2022. Plaintiff Gregory Barrow alleged that prison medical staff contracted by Corizon Health, Inc. ignored a serious MRSA infection he developed while incarcerated at a Philadelphia prison facility during November and December 2021. According to the complaint, Barrow presented a progressively worsening infected boil on his right buttock, which prison doctors repeatedly failed to treat appropriately over the course of approximately one week. He was ultimately transferred to Nazareth Hospital for surgical intervention on December 11, 2021; however, the complaint alleged that prison medical staff thereafter failed to follow the hospital's prescribed post-surgical aftercare protocol, causing Barrow permanent disfigurement. Claims were brought under 42 U.S.C. § 1983 and Pennsylvania common law against the City, Corizon, and individual medical providers. The case was stayed as to Corizon upon that entity's commencement of bankruptcy proceedings in its successor entity Tehum Care Services.

57. Nunez Bravo v. City of Philadelphia et al., No. 2:22-cv-05190 (E.D. Pa.). Filed 2022. Plaintiff, on behalf of the estate of Abraham Nunez, brought this action alleging that the

17

City of Philadelphia and PDP officials violated Nunez's Eighth Amendment rights by failing to provide him adequate medical care and by failing to protect him from the risk of suicide while he was detained at the Philadelphia Industrial Correctional Center (PICC). The complaint alleged that defendants were on notice of Nunez's serious mental health needs and suicidal ideation and failed to take constitutionally required steps to monitor and treat him.

58. McDonald-Witherspoon v. City of Philadelphia et al., No. 2:17-cv-01914 (E.D. Pa.); aff'd sub nom. No. 21-1019 (3d Cir. 2021); see also 481 F. Supp. 3d 424 (E.D. Pa. 2020). Filed April 2017. Plaintiff Michelle McDonald-Witherspoon filed this civil-rights action against the City of Philadelphia, Corizon Health, Inc., Curran-Fromhold Correctional Facility officials, and individual medical personnel including Vivian Gandy, Amber E. Browne, and Jeanette Palmer, alleging deliberate indifference to her serious medical needs during incarceration at CFCF in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983.

59. Chambers v. City of Philadelphia et al., No. 2:23-0137 (E.D. Pa.) after April 6, 2021 (date of death). Plaintiff Ebony Chambers, on behalf of the estate of her son Rahsaan Chambers (age 22), filed this wrongful death action against the City of Philadelphia and Corizon Health, Inc., the PDP's contracted medical provider, alleging deliberate indifference to Rahsaan Chambers's serious medical needs while detained at Curran-Fromhold Correctional Facility. The complaint alleged that Chambers, who suffered from Type 1 diabetes, received inadequate monitoring and treatment for his condition during his detention. He developed diabetic ketoacidosis and was taken to the hospital only after

he had already suffered catastrophic medical deterioration; he fell into a vegetative state and died on April 6, 2021.

## THE TEXAS TWO-STEP RESTRUCTURING AND BANKRUPTCY DEFAULT

60. In May 2022, Corizon Health, Inc. undertook a significant corporate restructuring designed to insulate its profitable operations from massive tort liabilities. Corizon re-incorporated in Texas and executed a divisive merger.

61. Through this divisive merger, YesCare Corp. received all of Corizon's active contracts, representing approximately $200 million in annual government contracts, operational infrastructure, management personnel, and ongoing business operations.

62. Tehum Care Services was created as a shell entity and assigned approximately $1.2 billion in liabilities, including all pending litigation by tort claimants such as the Plaintiff.

63. In February 2023, Tehum filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas (Case No. 23-90086).

64. The Texas Two-Step restructuring was orchestrated and executed with the deliberate participation of the Individual Restructuring Defendants, Lefkowitz, Gefner, Sholey, Tirschwell, and King, who maintained control over both Tehum and YesCare, effectively making them alter egos.

65. The Tehum Care Services Chapter 11 Plan contained terms governing the duration and survival of releases and injunctions, conditioning their continuation on the Settlement Parties' timely performance of payment obligations.

66. On or about February 17, 2026, a payment of $2,012,022.75 was due from the Settlement Parties. The Settlement Parties failed to make this payment.

19

67. On March 4, 2026, the Official Committee of Unsecured Creditors ("PI/WD Trust") and the General Unsecured Claims Trust ("GUC Trust") filed a Notice of Failure to Cure (Docket No. 2617) in the Tehum bankruptcy, formally declaring that the cure period had begun.

68. The cure period expired without any remedial payment. As of March 5, 2026, and pursuant to Articles IV.B.2 and IX.I.5 of the Tehum Plan, all plan injunctions, stays, and releases were automatically and completely terminated. Accordingly, the claims against the Individual Restructuring Defendants, which were previously released pursuant to the Tehum Plan, are hereby reinstated.

69. Article IX.I.6 of the Plan expressly provides the Plaintiff with a 90-business-day window, extending until June 3, 2026, within which to commence causes of action against the Released Parties. The statute of limitations with respect to such causes of action has been tolled and is extended until June 3, 2026.

70. The Disclosure Statement filed in *In re Tehum Care Services, Inc.*, Case No. 23-90086 (Bankr. S.D. Tex.), ECF Document 1740 (filed October 2, 2024), identifies the following as Released Parties who would have received the benefit of the Estate Party Settlement: Isaac Lefkowitz, Frank Jeffrey Sholey, Sara Ann Tirschwell, and Jeffrey Scott King. This identification confirms the bankruptcy estate's recognition of these individuals' personal exposure to liability.

71. The bankruptcy record reveals that the entities involved in the restructuring failed to maintain corporate formalities, operated with joint bank accounts (Geneva Consulting and YesCare), had overlapping and contradictory ownership structures, and were grossly undercapitalized, Tehum had approximately $1 million in cash against $1.2 billion in

liabilities. The individual defendants' control over these entities and disregard for corporate separateness supports piercing the corporate veil to impose personal liability.

72. Under Pennsylvania law, corporate officers who personally participate in tortious or fraudulent conduct may be held individually liable regardless of the corporate form. The bankruptcy record provides specific evidence that Defendants Lefkowitz, Gefner, and Sholey each personally participated in directing the fraudulent transfers and structuring the divisive merger designed to eliminate Plaintiff's recovery.

73. The Debtor and Unsecured Creditors' Committee identified four main categories of potential fraudulent transfers: (1) approximately $24.5 million to M2 LoanCo; (2) approximately $5.5 million to Geneva Consulting; (3) $956,707 to Amerisource Bergen for PharmaCorr obligations; and (4) the divisive merger itself as a constructive fraudulent transfer. The Individual Restructuring Defendants who directed these transfers bear personal liability.

74. As a direct and proximate cause of the Defendants' actions and inactions, Ms. Franklin suffered immense physical injuries, excruciating pain, fear, and death.

75. The decedent's surviving family members suffered mental anguish and loss of companionship, comfort, financial support, and guidance.

76. The City of Philadelphia and Corizon failed to create, implement, and enforce policies, practices, and procedures to ensure that proper care was provided to the decedent.

77. The City of Philadelphia and Corizon failed to ensure medical personnel properly examined inmates making physical health complaints while incarcerated.

78. The City of Philadelphia and Corizon failed to dispense proper medication as prescribed by their own physicians and nursing staff.

79. The City of Philadelphia and Corizon failed to provide adequate medical personnel and staff to treat inmates with physical complaints and medical conditions while housed in the Philadelphia Prison System.

### COUNT I:
### FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
### FOURTEENTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF v. ALL DEFENDANTS

80. The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

81. Decedent was a pre-trial detainee in the custody of the City of Philadelphia at all times relevant hereto and was therefore entitled to the protections of the Fourteenth Amendment of the United States Constitution.

82. Decedent was prescribed medication for acute opiate withdrawal by Corizon's own medical personnel, and was never given that medication.

83. Defendants did not properly investigate or treat decedent's medical complaints.

84. Defendants did not properly assess and examine decedent's medical complaints, and refused to conduct assessments at decedent's cell even when she was physically unable to ambulate.

85. Defendants left decedent to suffer in her cell knowing she was going through acute opioid withdrawal, which they documented carried risks of "severe withdrawal, seizures, change in mental status, death."

86. The Defendants ignored the decedent's serious medical complaints.

87. Defendants failed to protect decedent's physical wellbeing.

88. Defendants deliberately, recklessly, and with conscious disregard of decedent's wellbeing, ignored decedent's obvious need for medical treatment, evaluation, and medication.

89. Defendants deliberately, recklessly, and with conscious disregard of decedent's wellbeing, denied decedent of medical care and failed to ensure that decedent received timely and appropriate medical attention.

90. Defendants acted deliberately, recklessly, and with a conscious disregard of the obvious risk that the decedent had a serious and life-threatening medical condition.

91. Defendants' actions and inactions caused decedent to needlessly suffer, served no legitimate penological purpose, and caused her death.

92. As a direct and proximate cause of Defendants' actions and inactions, the decedent suffered injury, immense physical pain, humiliation, fear, and ultimately death.

WHEREFORE, the Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

## COUNT II:
## SUPERVISOR LIABILITY
## FOURTEENTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFF v. DEFENDANT HERDMAN

93. The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

94. Defendant Herdman was deliberately indifferent to the needs of pretrial detainees being held in the PPS.

23

95. Defendant was aware that certain policies and customs posed a grave danger to inmates detained in the PPS, including the decedent.

96. Defendant Herdman maintained a policy of staffing the PPS with an insufficient number of qualified medical staff, thereby ensuring that inmates in acute medical distress, including those suffering acute opioid withdrawal, were denied adequate care.

97. Defendant Herdman did not give the decedent her prescribed medication, which ultimately led to her death.

98. Defendants Herdman did not properly ensure that inmates experiencing opioid withdrawal were given their prescribed medications, despite knowing this failure posed a risk of death.

99. The policies, procedures, and standards for assessing the medical needs of inmates were defective and therefore failed the decedent, ultimately causing her death.

100. Despite knowledge of these failures, Defendant did nothing to implement corrective policies or correct customs which they knew posed a serious and ongoing danger to inmates and pre-trial detainees.

101. The Defendant were deliberately indifferent to the wellbeing of inmates experiencing opiate withdrawal detained in the PPS, including the decedent.

102. Defendant knew of his supervisory failures and knew many inmates would suffer through withdrawal without receiving proper medical care, but deliberately failed to correct the problem.

103. Defendant was aware of a substantial risk to detainees if they did not receive proper medical care for opioid withdrawal.

104.     The Defendant's establishment and maintenance of the above-mentioned policies and customs directly caused the decedent to be deprived of her Constitutional rights under the Fourteenth Amendment.

105.     As a direct and proximate result of the Defendant's deliberate indifference, the decedent suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, the decedent's family suffered mental anguish and a loss of companionship, comfort, financial support, and guidance.

WHEREFORE, the Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

**COUNT III:**
**MUNICIPAL LIABILITY**
**FOURTEENTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF v. DEFENDANTS CITY OF PHILADELPHIA, CORIZON, AND YESCARE**

106.     The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

107.     Defendant City of Philadelphia outsourced the medical care for inmates to Defendant Corizon, but retained ultimate constitutional responsibility for the welfare of all inmates in its custody.

108.     YesCare has successor liability for all of Corizon's tortious conduct as set forth herein.

109.     Defendants City of Philadelphia and Corizon promulgated and maintained policies and customs, as pled at length above, which were the moving force that caused the decedent's constitutional and statutory rights to be violated.

110. Defendants City of Philadelphia and Corizon failed to adhere to proper protocol in detecting and safeguarding inmates when inmates made serious medical complaints.

111. Defendants City of Philadelphia and Corizon maintained a policy of not staffing the PPS with the proper number of doctors and medical staff needed to treat the medical needs of inmates.

112. Defendants City of Philadelphia and Corizon maintained a policy of not properly distributing prescribed medication to inmates, including those experiencing acute opioid withdrawal.

113. Defendants City of Philadelphia and Corizon maintained a policy of not properly ensuring that medical assessments of inmates were conducted in a timely manner, and of not requiring that assessments be conducted at an inmate's cell when the inmate was unable to ambulate.

114. All of the pled policies and customs were implemented before, during, and after decedent's detention at the PPS.

115. Defendants knew of the dangers posed by these policies and customs and knew that those dangers were substantially certain to result in serious injury or death to detainees in acute opioid withdrawal.

116. Despite this prior knowledge, Defendants City of Philadelphia and Corizon took no steps to enact proper policies to remedy the problematic customs and practices.

117. Had Defendants City of Philadelphia and Corizon properly promulgated appropriate protocol, not maintained improper customs, or adequately trained and supervised the individual defendants, the decedent would have received appropriate care and would not have died.

118.  Defendants City of Philadelphia and Corizon were deliberately indifferent to the constitutional rights of the decedent.

119.  As a direct and proximate result of Defendants City of Philadelphia and Corizon's policies and customs, the decedent suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, the decedent's family suffered mental anguish and a loss of companionship, comfort, financial support, and guidance.

WHEREFORE, the Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same. Plaintiff is not seeking punitive damages related to this Count.

**COUNT IV:**
**FRAUD AND PERSONAL PARTICIPATION IN FRAUDULENT RESTRUCTURING**
**PLAINTIFF v. DEFENDANTS LEFKOWITZ, GEFNER, SHOLEY, TIRSCHWELL,**
**AND KING**

120.  The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

121.  Defendants Lefkowitz, Gefner, Sholey, Tirschwell, and King (collectively, the "Individual Restructuring Defendants") personally participated in, directed, and/or facilitated a fraudulent corporate restructuring designed to strip assets from Corizon Health, Inc. and transfer them to YesCare Corp., while leaving a shell entity, Tehum Care Services, to absorb approximately $1.2 billion in liabilities owed to tort claimants, including the Plaintiff.

122.    Under Pennsylvania law, corporate officers and directors who personally participate in tortious or fraudulent conduct may be held individually liable regardless of the corporate form.

123.    Defendant Lefkowitz is the single most culpable individual in the restructuring scheme. He simultaneously served as director of multiple entities on different sides of the transaction, personally orchestrated the Geneva Consulting arrangement through which $5.5 million was siphoned from the Debtor, controlled the lender entity (M2 LoanCo) through which $24.5 million was transferred, and personally recommended and implemented the Texas Two-Step restructuring strategy.

124.    Defendant Gefner occupied conflicting positions as both Tehum director and YesCare president, the most direct evidence of controlling both sides of a fraudulent transaction. He controlled the entity (Perigrove) that acquired the Debtor's parent and controlled the bank accounts from which millions of dollars were transferred while excluding the Debtor's existing management from access.

125.    Defendant Sholey personally executed the financial transfers to Geneva Consulting at Lefkowitz's direction, had intimate knowledge of the restructuring's financial mechanics, and directly benefited from the fraudulent scheme by obtaining the CEO position at the profitable successor entity YesCare.

126.    Defendant Tirschwell, as CEO of both Corizon and YesCare, had ultimate executive authority over the operational decisions of both entities during the relevant period, including the restructuring. Her identification as a Released Party in the Tehum bankruptcy Disclosure Statement confirms the bankruptcy estate's recognition of her personal exposure.

127.     Defendant King, as Chief Legal Officer of both Corizon and YesCare, had direct involvement in structuring, reviewing, and approving the legal mechanics of the divisive merger and the Texas Two-Step restructuring, and bears personal liability for designing the legal scheme that deprived Plaintiff of recovery.

128.     The Individual Restructuring Defendants' conduct was willful, wanton, and in reckless disregard for the rights of tort claimants, including the Plaintiff, and was undertaken with the specific intent to deprive Plaintiff and similarly situated claimants of their ability to recover for injuries caused by Corizon's deliberate indifference to inmate medical needs.

129.     As a direct and proximate result of the Individual Restructuring Defendants' fraudulent conduct, the Plaintiff has been deprived of the ability to recover against the entity primarily responsible for her injuries and has suffered damages.

WHEREFORE, the Plaintiff claims of Defendants Lefkowitz, Gefner, Sholey, Tirschwell, and King a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

**COUNT V:**
**MEDICAL NEGLIGENCE**
**PENNSYLVANIA LAW**
**PLAINTIFF v. DEFENDANTS CORIZON, YESCARE, HERDMAN, FIERIMONTE, FOREMAN, JACOBS, MORET, PEART, TURNER, AND WILBRAHAM**

130.     The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

131. At all times relevant to this Complaint, Defendants Corizon, YesCare, Herdman, Fierimonte, Foreman, Jacobs, Moret, Peart, Turner, and Wilbraham (collectively, the "Medical Defendants") owed a duty to Vivian Franklin to provide medical care consistent with the applicable standard of care for a healthcare professional practicing in a correctional healthcare setting.

132. A medical provider-patient relationship existed between each of the Medical Defendants and Vivian Franklin from the time of her intake on August 15, 2021, through the time of her death on August 16, 2021. The Medical Defendants undertook the care, assessment, and treatment of Ms. Franklin as a patient, thereby establishing the requisite duty of care.

133. The applicable standard of care required the Medical Defendants to, among other things: (a) conduct a thorough and complete intake medical assessment, including the accurate documentation of a patient's known substance dependence; (b) institute and maintain an appropriate opioid withdrawal monitoring protocol for a patient with known heroin dependence; (c) administer prescribed withdrawal medications as ordered; (d) conduct timely re-assessments of a patient's withdrawal symptoms as they escalated; (e) perform a physical assessment of a patient at her bedside when she is too ill to ambulate; (f) escalate care when a patient's condition visibly deteriorates; and (g) ensure continuity of care and communication among all treating providers.

134. Each of the Medical Defendants breached the applicable standard of care as follows:

a. Defendant Fierimonte deviated from the standard of care by failing to properly and completely document Ms. Franklin's opioid dependence, history of substance use, and

anticipated withdrawal severity at the time of intake, thereby depriving all subsequent treating providers of critical clinical information.

b.  Defendants Foreman, Jacobs, and Wilbraham deviated from the standard of care by conducting inadequate assessments of Ms. Franklin's withdrawal condition; by failing to ensure that the withdrawal medications they ordered were administered to their patient; and by failing to follow up on the execution of their own medical orders when it was apparent that Ms. Franklin's condition was worsening.

c.  Defendant Turner deviated from the standard of care by failing to ensure that the withdrawal protocol initiated at intake was properly executed, that prescribed medications were administered, and that Ms. Franklin's deteriorating condition was escalated to appropriate medical personnel.

d.  Defendant Peart deviated from the standard of care by failing to act on the results of her own COWS assessment, which documented a score of 6, severe joint aches, and elevated blood pressure, by not ensuring Ms. Franklin received her prescribed medications and by not escalating her care.

e.  Defendant Moret deviated from the standard of care by failing to conduct a proper bedside physical assessment of Ms. Franklin in the early morning hours of August 16, 2021, when Ms. Franklin was unable to ambulate and was in documented acute withdrawal. Moret's own records confirm that the assessment did not occur. The standard of care required a bedside assessment and, if warranted, transfer to medical observation.

f.  Defendant Herdman deviated from the standard of care in his capacity as Chief Medical Officer by failing to implement adequate policies and procedures for the management of acute opioid withdrawal, for the monitoring and medication

administration for withdrawal patients, and for the proper response when a patient is too ill to present for sick call.

g. Defendants Corizon and YesCare deviated from the applicable standard of care through their institutional failures in staffing, training, supervision, and policy, which directly caused the individual Medical Defendants' breaches as described herein.

135. The deviations from the standard of care by each of the Medical Defendants were a direct and proximate cause of Vivian Franklin's injuries, suffering, and death. Had the Medical Defendants complied with the standard of care, most critically, had they administered the prescribed withdrawal medications and conducted a proper bedside assessment in the early morning hours of August 16, 2021, Ms. Franklin's death would have been preventable.

136. As a direct and proximate result of the Medical Defendants' negligence, Ms. Franklin suffered acute opioid withdrawal without medication, severe and escalating physical pain and distress, cardiac arrest, anoxic brain injury, and death.

137. As a further direct and proximate result of the Medical Defendants' negligence, Ms. Franklin's estate and surviving family have suffered the damages set forth herein, including the loss of her life, her companionship, and her financial support.

WHEREFORE, the Plaintiff claims of the Medical Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

## COUNT VI:
## SUCCESSOR LIABILITY
## PLAINTIFF v. DEFENDANT YESCARE CORP.

138. The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

139. In May 2022, Corizon Health, Inc. executed a divisive merger through a Texas Two-Step restructuring, re-incorporating in Texas and dividing its assets and liabilities between YesCare Corp. and Tehum Care Services.

140. YesCare Corp. received all of Corizon's active contracts, representing approximately $200 million in annual government contracts, operational infrastructure, management personnel, and ongoing business operations.

141. Tehum Care Services was created as a shell entity and assigned approximately $1.2 billion in liabilities, including all pending litigation.

142. Under Pennsylvania law, YesCare Corp. is liable as the successor to Corizon Health, Inc. on the following independent theories:

a. De Facto Merger: The transaction between Corizon and YesCare constitutes a de facto merger because there was continuity of the same business operations; the same management was retained, including Frank Jeffrey Sholey's transition from Corizon's CFO to YesCare's CEO, Sara Ann Tirschwell's continuation as CEO, and Jeffrey Scott King's continuation as Chief Legal Officer; the same corporate form was substantially continued; and the parties explicitly contemplated YesCare's assumption of Corizon's role and responsibilities.

b. Mere Continuation: YesCare is the mere continuation of Corizon's medical services business. The discontinuity in corporate form is purely superficial and attributable to Corizon's deliberate restructuring designed to shield profitable operations from liability.

At least one federal court has already found that YesCare is 'a mere continuation of pre-division Corizon.' Kelly v. Corizon Health Inc., No. 2:22-cv-10589, 2022 WL 16575763 (E.D. Mich. Nov. 1, 2022).

c. Fraud Exception: The Texas Two-Step restructuring was executed with fraudulent intent to avoid liability. The creation of Tehum as a liability shell, combined with the retention of insider management and control, evidences fraud in the transfer of assets.

143. As the successor in interest to Corizon Health, Inc., YesCare Corp. is liable for all claims and damages arising from Corizon's deliberate indifference to the decedent's medical needs and Corizon's institutional medical negligence.

144. As a direct and proximate result of the conduct of Corizon, for which YesCare is liable as successor, the decedent suffered immense physical pain, humiliation, fear, physical injuries, and death.

WHEREFORE, the Plaintiff claims of Defendant YesCare Corp. a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

## COUNT VII:
### PIERCING THE CORPORATE VEIL AND ALTER EGO LIABILITY
### PLAINTIFF v. DEFENDANTS YESCARE CORP., LEFKOWITZ, GEFNER, SHOLEY, TIRSCHWELL, AND KING

145. The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

146. The corporate veil separating YesCare Corp. from Tehum Care Services should be pierced based on their alter ego status.

34

147.    There is such unity of interest and ownership between YesCare and Tehum that separate corporate personalities do not exist in substance, as evidenced by: Frank Jeffrey Sholey's transition from CFO of Corizon to CEO of YesCare; David Gefner's simultaneous service as Tehum director and YesCare president; Sara Ann Tirschwell's service as CEO of both Corizon and YesCare; and Jeffrey Scott King's service as Chief Legal Officer of both Corizon and YesCare.

148.    There was commingling of funds and operations, as demonstrated by the joint bank accounts maintained between Geneva Consulting LLC and YesCare, and the millions of dollars flowing from YesCare's government contracts to insider entities PharmaCorr and the CHS Employee Group.

149.    YesCare exercised complete domination over Tehum, with the same insiders controlling both entities and directing the flow of assets and liabilities between them.

150.    The corporate formalities between YesCare and Tehum have not been maintained, as evidenced by contradictory ownership claims regarding Geneva Consulting and the failure to maintain proper corporate records separating the two entities.

151.    Piercing the corporate veil is necessary to prevent the fraud and injustice of allowing YesCare to profit indefinitely from Corizon's medical services contracts while the shell entity Tehum absorbs all liability for Corizon's deliberate indifference and medical negligence resulting in the death of Vivian Franklin.

152.    Defendants Lefkowitz, Gefner, Sholey, Tirschwell, and King each personally participated in or facilitated the fraudulent restructuring and used the corporate forms as instrumentalities for the fraudulent scheme. Their control over the entities involved and

35

their disregard for corporate separateness renders them personally liable under alter ego and veil-piercing theories.

153.    As a result of YesCare's alter ego status with Tehum and Corizon, and the Individual Restructuring Defendants' personal participation in the fraudulent scheme, YesCare, Lefkowitz, Gefner, Sholey, Tirschwell, and King are jointly and severally liable for all claims and damages arising from Corizon's and Tehum's conduct as alleged herein.

WHEREFORE, the Plaintiff claims of Defendants YesCare Corp., Lefkowitz, Gefner, Sholey, Tirschwell, and King a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.


**COUNT VIII:**
**VICARIOUS LIABILITY, RESPONDEAT SUPERIOR**
**PLAINTIFF v. DEFENDANTS CORIZON AND YESCARE**

154.    The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

155.    The negligence and medical malpractice of Defendants Corizon and YesCare, by and through their agents, servants, and/or employees, occurred within the course and scope of their agency and employment.

156.    Defendants Corizon and YesCare employed or contracted the individual Medical Defendants to provide medical services at the Philadelphia Prison System on their behalf.

157.     The individual Medical Defendants were providing medical services to inmates including Vivian Franklin during the course of and within the scope of their employment with Corizon at all times relevant hereto.

158.     The individual Medical Defendants' services were for the purpose of benefiting Corizon and, as successor, YesCare.

159.     Defendants Corizon and YesCare are vicariously liable for all acts and omissions of the individual Medical Defendants committed within the course and scope of their employment as set forth herein.

WHEREFORE, the Plaintiff claims of Defendants Corizon and YesCare a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

**COUNT IX:**
**WRONGFUL DEATH UNDER PENNSYLVANIA LAW**
**42 PA. C.S.A. § 8301**
**PLAINTIFF v. ALL DEFENDANTS**

160.     The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

161.     Plaintiff Dashawn Hayes brings this claim as Administrator of the Estate of Vivian Franklin, deceased, pursuant to Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. § 8301, for the benefit of Ms. Franklin's surviving children, parents, and/or other statutory beneficiaries.

162.     The death of Vivian Franklin was caused by the wrongful acts, negligence, deliberate indifference, and unlawful conduct of the Defendants as set forth herein,

including their deliberate indifference to her serious medical needs and their failure to provide timely and adequate medical care for her acute opioid withdrawal.

163.    As a direct and proximate result of Defendants' wrongful conduct, Ms. Franklin's surviving family members and beneficiaries have suffered and continue to suffer the following damages:

a.  Loss of companionship, comfort, society, guidance, solace, and counsel of the decedent;

b.  Loss of services, assistance, and support the decedent would have provided;

c.  Loss of the decedent's earnings, earning capacity, and financial contributions;

d.  Funeral and burial expenses; and

e.  Such other pecuniary losses as may be established at trial.

WHEREFORE, the Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

**COUNT X:**
**SURVIVAL ACTION UNDER PENNSYLVANIA LAW**
**42 PA. C.S.A. § 8302**
**PLAINTIFF v. ALL DEFENDANTS**

164.    The Plaintiff re-alleges each and every averment as set forth in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

165.    Plaintiff Dashawn Hayes brings this claim as Administrator of the Estate of Vivian Franklin, deceased, pursuant to Pennsylvania's Survival Act, 42 Pa. C.S.A. § 8302, to recover damages for the injuries suffered by Ms. Franklin during her lifetime as a result of Defendants' wrongful conduct.

166.    As a direct and proximate result of Defendants' deliberate indifference, negligence, and medical malpractice, Ms. Franklin suffered the following injuries and damages prior to her death:

a.  Severe physical pain and suffering from acute opioid withdrawal that went entirely untreated for the duration of her incarceration;

b.  Mental anguish, emotional distress, fear, and anxiety experienced by Ms. Franklin as she suffered from an increasingly catastrophic and ultimately fatal medical condition while confined to her cell;

c.  Loss of life's pleasures and enjoyment of life during the period of her illness;

d.  Medical and hospital expenses incurred as a result of the progression of her condition caused by Defendants' negligence; and

e.  All other damages recoverable under the Survival Act.

167.    Ms. Franklin's survival claims, including her pain and suffering, are not extinguished by her death and are properly asserted by the Administrator of her Estate pursuant to 42 Pa. C.S.A. § 8302.

WHEREFORE, the Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorneys' fees, and allowable costs of suit, and brings this action to recover the same.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury as to each count and each Defendant.

Respectfully submitted,

39

/s Brian J. Zeiger
Brian J. Zeiger, Esquire
Attorney for Plaintiff
Dashawn Hayes, Administrator of the Estate of
Vivian Franklin

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DASHAWN HAYES, ADMINISTRATOR OF   :   CIVIL ACTION
THE ESTATE OF VIVIAN FRANKLIN,     :

                                  :   No.: 22-cv-3395

   Plaintiff,                   :

                                    :

  v.                           :

                                    :

CITY OF PHILADELPHIA, et al.,       :

                                    :

   Defendants.                :

### CERTIFICATE OF SERVICE

All parties to the instant action are part of this Court's ECF e-filing program and will

receive email copies of the foregoing.

                                     RESPECTFULLY SUBMITTED,

Dated: April 15, 2026             /s/ Brian J. Zeiger, Esquire
                                     Brian J. Zeiger, Esquire
                                     Identification No.: 87063
                                     LEVIN & ZEIGER, LLP
                                     TWO PENN CENTER
                                     1500 JFK BLVD, Suite 620
                                     Philadelphia, PA 19102
                                     (215) 546-0340
                                     zeiger@levinzeiger.com

                                     Counsel for the Plaintiff